P.M. v J.M. (2024 NY Slip Op 24131)

[*1]

P.M. v J.M.

2024 NY Slip Op 24131

Decided on April 26, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 26, 2024
Supreme Court, Westchester County

P.M., Plaintiff,

against
J.M., Defendant.

Index No. [REDACTED]

James L. Hyer, J.

On April 25, 2024, pursuant to a Decision and Order entered on April 2, 2024, (hereinafter "April 2 Decision") (NYSCEF Doc. No. 565), a hearing was commenced in this action wherein appearances were made by Plaintiff who identified himself as a self-represented litigant, Defendant, Defendant's counsel and the attorney for the children. At the end of the first day of hearing, upon further inquiry by the Court as to if Plaintiff had retained legal counsel in connection with this action, Plaintiff disclosed to the Court for the first time that in January of this year he had retained legal counsel (hereinafter "Plaintiff's Attorney #3), beyond his recently withdrawn counsel (hereinafter "Plaintiff's Attorney #2") who previously replaced Plaintiff's initial counsel (hereinafter "Plaintiff's Attorney #1"). As it appears that Plaintiff and multiple attorneys he has engaged have failed to comply with the Court Rules pertaining to the manner prescribed therein for legal counsel to file appearances in domestic relations matters the Court is compelled to enter this Decision to ensure future compliance.
RELEVANT FACTUAL AND PROCEDURAL
HISTORY
On January 20, 2023, Plaintiff commenced this matrimonial action with the filing of a Summons and Complaint by Plaintiff Attorney #1 (NYSCEF Doc. No. 1). On May 8, 2023, a Consent to Change Attorney was filed by Plaintiff's Attorney #2 as incoming counsel for Plaintiff (NYSCEF Doc. No. 5). On February 14, 2024, Plaintiff Attorney #2 filed an Order to Show Cause seeking the entry of an order permitting her firm to withdraw as legal counsel for Plaintiff (hereinafter "Motion Sequence #6") (NYSCEF Doc. Nos. 431-432). All parties and counsel appeared before the Court for a conference on February 16, 2024, wherein Motion Sequence #6 was unopposed and the Court granted the relief as sought (NYSCEF Doc. No. 498). During this appearance, Plaintiff's Attorney #2 represented that her firm had been terminated by Plaintiff and that she was not requesting a stay as Plaintiff wanted to proceed pro se.
Thereafter, in support of another application by Plaintiff, Plaintiff's Attorney #2 filed an [*2]Affidavit indicating, in part, that:
My office was initially retained to represent the Plaintiff, [XX], in connection with the above-captioned action for divorce on May 8, 2023. [XX] voluntarily terminated my office's representation of him on or about February 14, 2024. On February 17, 2024, [XX] re-retained my office for consultation purposes only (NYSCEF Doc. No. 526 ¶ 2).
The April 2 Order (NYSCEF Doc. No. 562) set forth the applicable Court Rules and statutes pertaining to the mandatory requirement of legal counsel to file notices of appearance and engagement agreements in domestic relations matters, and directed Plaintiff's Attorney #2 to file: (1) all retainer agreements, engagement agreements, statements of clients rights and responsibilities entered into between her firm and Plaintiff and/or she individually and Plaintiff; (2) all notices of appearance, limited scope or otherwise, filed as counsel for Plaintiff in this action; and (3) proof of completion of any limited scope representation trainings.
On April 10, 2024, Plaintiff's Attorney #2 filed Plaintiff's Retainer Agreement with her firm, dated May 8, 2023, together with a copy of an executed Statement of Clients Rights & Responsibilities (hereinafter the "Second Engagement Agreement"), along with an Affidavit asserting:
After speaking with outside ethics counsel, it is my understanding that my office is not required to file a Notice of Limited Appearance given the scope of our representation of the Plaintiff in this action (NYSCEF Doc. No. 576 ¶ e).
On April 11, 2024, an Order was entered which directed that Plaintiff's Attorney #2: (1) provide a memorandum of law addressing what basis exists for Plaintiff's Attorney #2 not having filed a Notice of Appearance in this action for Plaintiff, limited scope or otherwise, arising out of Plaintiff and Plaintiff's Attorney #2 and/or her firm entering into the Second Engagement Agreement, and; (2) requesting that Plaintiff's Attorney #2 file an Affidavit indicating what representation her firm was then currently providing to Plaintiff with respect to this action (hereinafter "April 11 Order") (NYSCEF Doc. No. 581).
On April 12, 2024, Plaintiff's Attorney #2 filed a Notice of Completion of Limited Scope Representation (NYSCEF Doc. No. 584), despite her having advised the Court that her ethics counsel informed her that she was not required to file of a Notice of Limited Scope Representation.
On April 12, 2024, Notices of Appeal were filed pertaining to the April 2 and April 11 (hereinafter collectively "Appeals") (NYSCEF Doc. Nos. 587 and 588), after which no decisions from the Appellate Division have been entered determining that Plaintiff's Attorney #2 was not required to file the Second Engagement Agreement or a Notice of Appearance in this action arising out of the Second Engagement Agreement.
On April 25, 2024, nearly one month following the entry of the April 2 Order, Plaintiff appeared before this Court at the hearing. At said appearance, Plaintiff initially advised the Court that he was proceeding as a self-represented litigant and later, upon further inquiry by the Court, advised the Court that he had retained Plaintiff's Attorney #3 at a date prior to the entry of the April 2 Order. The Court record reflects that no Notice of Appearance or Engagement Agreement have been filed by Plaintiff's Attorney #3.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
[1] Failure to File Engagement Agreement & Possible Ghostwriting
The responsibilities of an attorney appearing in a matrimonial action requires the examination of applicable provisions of the New York State Civil Practice Law and Rules ("CPLR"); and the New York Codes, Rules and Regulations ("NYCRR"), inclusive of the New York Rules of Professional Conduct ("NYRPC").
CPLR § 321(a) prohibits a party who has appeared with counsel from acting as a self-represented litigant without court approval, "If a party appears by attorney such party may not act in person in the action except by consent of the court." CPLR § 321(d) permits limited scope appearance:
1. An attorney may appear on behalf of a party in a civil action or proceeding for limited purposes. Whenever an attorney appears for limited purposes, a notice of limited scope appearance shall be filed in addition to any self-represented appearance that the party may have already filed with the court. The notice of limited scope appearance shall be signed by the attorney entering the limited scope appearance and shall define the purposes for which the attorney is appearing. Upon such filing, and unless otherwise directed by the court, the attorney shall be entitled to appear for the defined purposes. [emphasis added]
2. Unless otherwise directed by the court upon a finding of extraordinary circumstances and for good cause shown, upon completion of the purposes for which the attorney has filed a limited scope appearance, the attorney shall file a notice of completion of limited scope appearance which shall constitute the attorney's withdrawal from the action or proceeding.
The Supplemental Practice Commentaries provide guidance as to additional requirements imposed upon attorneys who enter limited scope retainers pursuant to CPLR § 321(d):
New CPLR 321(d), which took effect December 16, 2022, authorizes an attorney to make a "limited scope appearance" on behalf of a client in civil actions. This enables the attorney, by advance agreement with the client, to restrict the attorney's representation in an action to certain issues and only for a specified duration rather than to provide full service representation. The idea is to facilitate and encourage participation by the bar in pro bono representation. The new statute gives legislative authorization to a program started in 2016 by the Chief Administrative Judge (AO/285/16). The administrative order contains three requirements not specified in the statute: (1) the attorney must complete a certified training course in limited scope representation; (2) the attorney and client must execute a retainer agreement that "clearly articulates the scope of limited representation," and the client must give informed consent to the limited nature of the representation; and (3) "the court deems the limited appearance otherwise appropriate under the circumstances." CPLR 321(d)(1) goes further by providing: (4) that the attorney must file a notice with the court, signed by the attorney, advising of the limited scope and "defin[ing] the purposes for which the attorney is appearing" (no motion is required); and (5) even though the filing automatically gives the attorney the right to provide the specified limited scope of representation, the court may direct otherwise. CPLR 321(d)(2) explains the steps the attorney takes to finalize the representation. [emphasis added]
(see CPLR § 321, C321:4 Limited Scope Representation).
22 NYCRR §§ 202.16 (c), 1400, and 1200 then work in tandem to provide court rules pertaining to the filing of engagement agreements in matrimonial actions. 22 NYCRR § 202.16 (c)(1) provides the following:
A signed copy of the attorney's retainer agreement with the client shall accompany the statement of net worth filed with the court, and the court shall examine the agreement to assure that it conforms to Appellate Division attorney conduct and disciplinary rules. Where substitution of counsel occurs after the filing with the court of the net worth statement, a signed copy of the attorney's retainer agreement shall be filed with the court within 10 days of its execution. [emphasis added]
Further, 22 NYCRR § 1400 sets forth the following instructions:
This Part shall apply to all attorneys who, on or after November 30, 1993, undertake to represent a client in a claim, action or proceeding, or preliminary to the filing of a claim, action or proceeding, in either Supreme Court or Family Court, or in any court of appellate jurisdiction, for divorce, separation, annulment, custody, visitation, maintenance, child support, or alimony, or to enforce or modify a judgment or order in connection with any such claims, actions or proceedings. This Part shall not apply to attorneys representing clients without compensation paid by the client, except that where a client is other than a minor, the provisions of section 1400.2 of this Part shall apply to the extent they are not applicable to compensation. [emphasis added]
An attorney who undertakes to represent a party and enters into an arrangement for, charges or collects any fee from a client shall execute a written agreement with the client setting forth in plain language the terms of compensation and the nature of services to be rendered. The agreement, and any amendment thereto, shall be signed by both client and attorney, and, in actions in Supreme Court, a copy of the signed agreement shall be filed with the court with the statement of net worth. Where substitution of counsel occurs after the filing of the net worth statement, a signed copy of the attorney's retainer agreement shall be filed with the court within 10 days of its execution. A copy of a signed amendment shall be filed within 15 days of signing. A duplicate copy of the filed agreement and any amendment shall be provided to the client. The agreement shall be subject to the provisions governing confidentiality contained in Domestic Relations Law, section 235(1). [emphasis added]
(22 NYCRR §§ 1400.1, 1400.3).
22 NYCRR § 1200 sets forth the following instructions:
Rule 1.0(g) "Domestic relations matter" denotes representation of a client in a claim, action or proceeding, or preliminary to the filing of a claim, action or proceeding, in either Supreme Court or Family Court, or in any court of appellate jurisdiction, for divorce, separation, annulment, custody, visitation, maintenance, child support or alimony, or to enforce or modify a judgment or order in connection with any such claim, [*3]action or proceeding.
Rule 1.5(d)(5)(ii) A lawyer shall not enter into an arrangement for, charge or collect: "any fee in a domestic relations matter if: a written retainer agreement has not been signed by the lawyer and client setting forth in plain language the nature of the relationship and the details of the fee arrangement; or
Delving into the meaning of the use of "preliminary to" in 22 NYCRR § 1400, one author noted, "We believe that the words 'preliminary to' are intended to make the rule applicable to any consultation regarding such claim, action or proceeding which results in the commencement of such claim, action or proceeding which results in the commencement of such a claim, action or proceeding within a reasonable time after the consultation." (see Law & The Family NY Forms § 4:1 [2d])
In the context of matrimonial actions, the instance of ghostwriting is intertwined with the requirements set forth above pertaining to the filing of retainer agreements and obtaining informed consent from a client as to any limited scope representation engaged in:
As to the appropriateness of an attorney "ghostwriting" pleadings, the Rule of Professional Conduct provide, "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, the client gives informed consent and where necessary notice is provided to the tribunal and/or opposing counsel" [Rule 1.2(c)]. It is abundantly clear that the answer submitted on behalf of the defendant was prepared by someone with legal training. This is permitted under the Rule of Professional Conduct, but there is no disclosure of this fact in the pleading, no notice to the court or opposing counsel, and no indication that there was any "informed consent" by the client. [emphasis added]
(Citibank [SD] N.A. v Howley, 31 Misc 3d 1216[A], *4-5 [Civ Ct, Richmond County 2011]).
Here, the Court recited the above Court Rules and law in the April 2 Order, followed by a directive that Plaintiff's Attorney #2 file engagement agreements and notices of appearance in compliance with the applicable Court Rules and law. Thereafter, upon receipt of the Affidavit of Plaintiff's Attorney #2 indicating that her ethics counsel advised her that she need not file any notice of appearance in this action arising out of the Second Engagement Agreement, the Court entered the April 11 Order which requested that Plaintiff's Attorney #2 submit a memorandum of law citing authority for her position as her prior submissions were silent as to any such authority. To date, neither Plaintiff or Plaintiff's Attorney #2 have submitted any such authority and the Court is unaware of any such authority, despite a diligent search for the same, nor have any decisions been entered pertaining to the Appeals offering further guidance.
On the contrary, the Court has reviewed the law and Court Rules cited above, which clearly set forth a framework by which attorneys engaged by parties for domestic relations matters must take certain delineated steps created to afford their clients protection from potential attorney misconduct. These steps involve the execution of written engagement agreements and execution statement of client's rights and responsibilities, followed by filing same with the Court with a Notice of Appearance in circumstances where domestic relations matter action or proceeding has been commenced. The filing of these documents, with a notice of appearance (limited scope or otherwise) is an important part of this framework as it is designed to afford [*4]litigants in domestic relations matters another layer of protection by placing the Courts in a role whereby it may confirm that these documents have been completed in compliance with the applicable law and Court Rules. To the extent that attorneys take the position that by acting in a "consulting" capacity they may avoid compliance with the above Court Rules and law, the Court rejects such a position. Accepting such a position would permit attorneys in domestic relations matters to circumvent the oversight intended by these Court Rules by entering into such "consulting" agreements in contravention of the public policy seeking to protect clients of attorneys in domestic relations matters which prompted the adoption of the aforementioned Court Rules.
Following the non-compliance by Plaintiff's Attorney #2 resulting in the entry of the April 2 Order wherein the Court Rules and law were set forth, it is troubling to the Court that Plaintiff did not disclose the existence of Plaintiff's Attorney #3 who, pursuant to the sworn statements of Plaintiff, appears to continue to be retained by him for legal services related to this action, having not filed any engagement agreement or notice of appearance. While Plaintiff's identification of himself as a self-represented litigant while having entered into a "consulting" agreement with Plaintiff's Attorney #2 may have been inadvertent due to his lack of familiarity with the above Court Rules and law, the Court is concerned that his repeated failure pertaining to the lack of disclosure of Plaintiff's Attorney #3, as it appears to be deliberate seeing as though the applicable Court Rules and law were set forth in the April 2 Order, and Plaintiff nonetheless failed to alert the Court as to the existence of Plaintiff's Attorney #3 despite his recent representation that he retained her services prior to the April 2 Order.
In order to proceed with this litigation, the Court must be aware of each of the parties' legal representation in this matter and/or their status as a self-represented litigant.
ACCORDINGLY, IT IS HEREBY:
ORDERED that on or before April 30, 2024, Plaintiff shall serve a copy of this Decision and Order on any attorneys, including but not limited to, Plaintiff's Attorney #3 that he has retained to represent him in this action or related to this action; and it is further
ORDERED that on or before May 10, 2024, Plaintiff's Attorney #3 and any other attorneys retained by Plaintiff shall file with the Court the following: (1) all retainer agreements, engagement agreements, statements of clients rights and responsibilities entered into between such attorneys and Plaintiff; and (2) all notices of appearance, limited scope or otherwise, as counsel for Plaintiff in this action, as required by applicable law and Court Rules OR (3) a memorandum of law why the filing of such documents set forth in section (1) and (2) herein is not required by applicable law and Court Rules; and it is further
ORDERED, that the Hearing shall continue on [REDACTED], wherein all parties and counsel must appear in person; and it is further
ORDERED that on or before April 30, 2024, Defendant's counsel shall serve a copy of this Decision and Order with a Notice of Entry on all parties and shall file proof of service of same on that date.
The foregoing constitutes the Decision and Order of the Court.
White Plains, New York
Dated: April 26, 2024
ENTER:
Hon. James L. Hyer, J.S.C.